Parker C. J.
delivered the opinion of the Court. The appellant, a French subject, son, and calling himself one of two heirs of Jean C. Picquet, also a French subject, who died intestate in France in the year 1818, claimed letters of administration on the goods and estate of his deceased father within this commonwealth, alleging that James Swan, a citizen of this commonwealth and of the city of Boston, was indebted to the father, at the time of his Decease, on certain bills of exchange drawn by Swan, and for the payment of •which he is liable by the law merchant and 'he laws of the land.
By St. 1817, c. 190, § 16, it is enacted, “ that when any person wrho has died or shall die intestate without the commonwealth, shall leave estate of any description within the same to be administered, any person interested in such estate shall be entitled to letters of administration thereon, in like manner as if such intestate had died within the commonwealth ; and the judge of probate of any county wherein such estate shall be found, shall have power to grant such letters of administration accordingly, which shall extend to all the estate of such intestate within the commonwealth.”
The 14th section of the same statute provides, that “ every administrator shall, before entering upon the execution of the trust, give bond to the judge of probate, with good and sufficient sureties, upon condition,” &c. This provision relates as well to administrators of the estate of a person who dies without the commonwealth, as of those who die within. And the former section has been held, in a late case brought before us on appeal from the decree of the judge of probate appointing this same person administrator, to apply to the subjects of foreign countries, as well as to citizens of this commonwealth who may die without the limits thereof It was also determined in the same case, that a debt due from a citizen of this commonwealth to a foreign subject at the time of his death, was, within the meaning of the legislature, estate left by him in this common wealth, it being held proper to give a liberal construction to this legislative provision, to *66 enab.e the representatives of deceased foreign creditors to pursue the debts of the deceased here, in the only way in which by our laws they can be recovered, viz. through the power of administration granted according to the laws of this commonwealth.
Thus it appears that the appellant, though a foreigner, being heir to a person who died without this commonwealth, leaving estate here, is entitled to administration thereon, according to the standing laws which regulate this subject.
Letters were accordingly granted by the judge of probate of the county of Suffolk, but upon the condition that the appellant, with sufficient sureties within this commonwealth, should give bond in the penal sum of 50,000 dollars, to secure faithful administration and accounting for the property which might come into his hands, according to the before mentioned provisions of the statute.
We do not hesitate to say, that on the case as it was probably presented to the judge of probate, he acted wisely in requiring bonds of the kind and to the amount complained of. The amount of the penalty of the bond is left by the law entirely to his discretion. He undoubtedly was governed in this case by the supposed amount of property claimed by the administrator, and had regard to the possible claims of creditors to the estate of the deceased in France ; whose interests ought to be secured, if not already secured according to the laws of that country ; and whether they were or not, does not appear to have been made known to the judge of probate. It would have been discreet and proper to require sureties living within this commonwealth, even if it were not required by law, for he could have no means of ascertaining the sufficiency of persons living elsewhere, and it was his duty to require a bond which could be made available for the purposes for which it was given, by force of the jurisdiction and 'aws of this State.
The appellant, oeing unable to comply with this condition on which he was to receive his letters of administration, applied to the legislature for relief, and that body, on the 19th of June, 1826, having considered his statement and circumstances, parsed a resolve, which was approved by the gover *67 nor, “ empowering ” the judge of probate to grant to the appellant letters of administration on the estate of his father Jean Claude Picquet, “ provided he shall give to the judge of probate a bond for the faithful discharge of his duty as administrator, with the usual conditions, sealed and duly executed by himself as principal and his only brother, Cyril Simon Baron Picquet, of Paris, (understood to have been then and to be now in France,) as surety ; and said bond shall be in lieu of every and all bond or bonds by any law or statute of this commonwealth now in force required ; and provided also that the bills of exchange in his petition set forth, shall be deposited in the State bank in Boston, and be, and remain under the order and control of said judge of probate.”
In September 1826 the appellant petitioned the judge of probate to grant him the letters of administration according to the terms of the resolve, offering to do and perform what is required therein ; but the judge refused to grant the prayer of the petition, or to issue the letters without such a bond as he had before required ; and an appeal from his decree upon this subject is the case now before us.
We do not see cause to reverse this decree on the ground that the judge of probate was bound to obey this resolve of the legislature, without exercising his discretion on the subject matter before him. The language of the resolve does not import a command or direction to him to execute the will of the legislature in relation to a subject of judicial cognizance placed by the laws under his authority and jurisdiction. It would be doing violence to the language and the intentions of the legislature, to suppose that it meant to dictate to a judi cial tribunal the course of its proceedings in a particular case. We do not think the legislature would have passed a resolve requiring and directing the judge of probate to do what by this resolve they intended only to empower him to do. The wise provision of the constitution, which restrains each department of the government within its appointed sphere, would have prevented a measure like that. We must suppose from tire language used, viz. “ that the judge of probate be empowered,” that doubts existed as to the power of the judge of probate to depart from the provisions of the stand *68 tng laws of the commonwealth in regard to granting adminis- ... . , . .... , . trations, and that it was intended to give him the authority specified in the resolve, if in his discretion he should see fit to exercise it in the manner therein proposed ; like some cases where the legislature have authorized the doing of par ticular acts, or the making of deeds or other instruments, without any design to deprive the judicial power of its constitutional authority to determine the validity of such acts or deeds. We suppose, therefore, that the judicial discretion vested a the judge of probate by the standing laws of the commonwealth, on all subjects within his jurisdiction, was left unimpaired by this resolve, and that he had the right, as before, to determine the penalty of the bond, judge of the sufficiency of the sureties, and decline substituting other security to the bond, if he should be of opinion that, by the general laws, he was not at liberty to take a security in a particular case, different from that which he should feel obliged to require in all others. And we think he judged wisely in this particular, for he might well doubt of the legality of taking any security but that which the general laws of the land made the condition on which letters of administration should be granted ; and he had reason to question the sufficiency of a surety living in a foreign country, over whose property or person the laws of this commonwealth had no control or jurisdiction ; and he might well decline to take as a substitute for the bond, choses in action which he would be unable to make available for the benefit of those whose interests he felt bound to protect.
This resolve has been viewed by the" counsel of the appelant, as suspending the operation of the statute of 1817, c. 190, so far as that statute makes the giving of a bond with surety at the discretion of the judge, a condition precedent to the power of administration, as prescribed by the 14th section. We cannot view it in that light, for it ought -not to be presumed that the legislature intended to do what by the constitution they have no authority to do, and we think it very clear that they have no authority by the constitution to suspend any of the general laws, limiting the suspension to an individual person, and leaving the law still in force in regard to every *69 one else. This would not be suspending a law by vn tue of their constitutional power so to do in cases of emergency, but it would be to dispense with the law in favor of an individual, leaving all other subjects of the government under obligation to obey it; and we do not find any such dispensing power in the constitution. If a law is suspended, it has no force or operation, while the suspension continues, against any one, and it is one of those dernier acts of legislative power, intended by the people to be exercised only when their essential security, or the common convenience, should in the opinion of the legislature require it; for by the 20th article of the Declaration of Rights, the power of suspending the laws, or the execution of the laws, ought never to be exercised but by the legislature, or by authority derived from it, to be exercised in such particular cases only (which means upon such particular laws) as the legislature shall expressly provide for. It is obvious that this article gives no authority to dispense with the obligations of any particular law, in favor of individual citizens or strangers, leaving the law still in force in regard to all other members of the community. The true principle by which courts of law are to be governed, on questions of this nature, are most accurately and distinctly stated by Jackson J., in the case of Holden v. James, cited by the appellant’s counsel in the argument. We feel then authorized to say, that the legislature did not, by this resolve, intend to suspend the law of administrations in favor of the appellant, nor did they intend to indulge him with a dispensa tion from the requisitions of that law. All that we can gathe. from the language of the resolve, and all that we ought to presume, considering the constitutional restrictions upon the legislature, is, that it was intended to authorize the judge of probate to take other security than is provided by that law, if in the sound exercise of his judicial discretion he should find he had authority, and that it was expedient so to do, it being a case, in the opinion of the legislature, well deserving all the relaxation from the ordinary course of procedure, which the constitution and laws would justify. If we were bound to consider this resolve as intended to be imperative upon the judge of probate, o pass a decree or do any judi *70 cial act according to the declared will of the legislature, although in his opinion he should violate the constitution or dispense with the legal obligations of any general statute, we do not hesitate to say, that he was bound by his oath of office to regard the constitution, rather than the resolve of the legislature. By general statutes which provide for appeals from inferior courts to those of a higher jurisdiction, it is required that the party claiming an appeal shall recognise with surety to prosecute his appeal and pay intervening damages and costs. We think that a resolve of the legislature directing a court to allow the appeal of A. B. without requiring such recognizance, would not have the force of law, because it would-be the exercise of a dispensing power, which is wisely withheld by the people from the legislature. Without doubt, they may repeal such a law, or suspend its operation for a limited time in regard to all the citizens or subjects of the State. By the general law no action can be sustained in behalf of any plaintiff not an inhabitant of the commonwealth, unless his writ be indorsed by some person of sufficient responsibility within the commonwealth. A resolve directing the Court of Common Pleas to sustain the action of A. B., a foreigner, without such indorsement, we think would have no binding force upon the court. Many instances of the like nature might be suggested, but it is unnecessary.[1]
The case of Rice et al. v. Parkman, 16 Mass. R. 326, has been cited, as showing that power thus exercised by the legislature has been decided by this Court to be constitutional ; but the cases are not analogous. There the legislature authorized a sale of real estate, in a case where the courts of law had no authority to grant such license. That is altogether different from directing a court which has jurisdiction, in what manner it shall exercise its power in a particular case.
Sufficient has been said to show that the judge of probate, in determining that his discretionary power upon the subject of the bond required by law to authorize the granting of let *71 ters of administration, was not impaired by the resolve of the legislature, decided correctly.
Influenced however by the same motives which probably led the legislature to consider the case of the appellant favorably and to facilitate his application to the tribunals of our country for the recovery of a debt alleged to be due from one of our citizens, and having regard to the reputation of the country, which might be charged with shutting the doors of justice against a stranger, by requiring of him terms w til which it may be impossible for him to comply, we have taken a view of the subject which probably did not occur to the judge of probate, and which we think will justify us in reversing the decree complained of, on the ground merely that the penalty of the bond, under the circumstances of this case, may legally and ought in discretion to be considerably reduced.
The object and purpose of the administration bond is to secure a faithful administration of the estate, and a fair distribution of its proceeds among those who, by the laws of this commonwealth or of the country where the deceased had his domicil, shall be entitled to them. In all countries governed by laws, creditors stand in the first rank, legatees in the second, and the general heirs of the deceased in the third In the case of intestacies, creditors and heirs are all who are entitled to distribution, with the exception of the widows of the deceased, whose rights vary in different countries. In the case before us the widow claims only as a creditor, in consequence of a matrimonial arrangement made according to the laws of France, as appears by the authenticated extract from the registry of the civil tribunal of the first instance of the department of the Seine, (analogous to our courts of probate,) to which this subject, as appears by the Code Napoleon, is committed. So that creditors and heirs are the only persons for whose security the administration bond need be taken. In regard to heirs, it appears by the same document, that the appellant and his brother, Cyril Simon Baron Picquet, are all who stand in that relation to the estate ; and it appears by a power of attorney duly authenticated and registered by the same tribunal, that the brother in France has *72 committed the entire authority and control over the effects in this country to the appellant; the terms of the power embracing every possible act which may be necessary to be done towards collecting these effects. We think therefore, in determining the penalty of the bond, we need not look to the security of the heirs, the appellant being entitled in his own right to one moiety of the final proceeds, and his brother in France having committed to him the entire and unlimited disposition of the other. In regard to creditors, without doubt it is the duty of the judge of probate, when called upon to grant administration to a foreigner, for the purpose of collect-mg the effects of the deceased here, to respect the probable claims of creditors here and in the country of the deceased, and generally, as there may not be the means of knowing the amount of claims upon the estate abroad, it would be wise in him to require security at least to the whole amount of the estate or effects expected to be received by virtue of the administration. But cases may exist where this rule may be departed from, and the case before us is one of that nature. We think we may assume it as a fact, that there are no creditors within this commonwealth, and as probable, that there are none within the United States, who have any claims upon this estate. Sufficient time since the coming of the appellant into this State in order to recover debts alleged to be due to the estate of his father, has elapsed, and sufficient notoriety has been given to his claim of administration, to raise a presumption that there are no creditors within this jurisdiction ; for although no opportunity has yet been given to file their claims, no administration having been granted, yet it is morally certain, that if creditors existed here, they would have claimed administration themselves, or have aided the appellant in obtaining letters. Assuming then that there is no necessity for securing heirs by the bond, nor creditors in this commonwealth, it follows that the only interest to be protected is that of creditors in France, the domicil of the deceased ;.for we should not be bound, even by comity, to look after the interests of creditors of any other foreign country. And if the French creditors have already obtained all the security which the laws of their country require, that the *73 effects collected shall be appropriated to the payment of then debts, there will be no reason for embarrassing the admimstrator by requiring him to give bonds and sureties here for their further security. Now after such an examination as the little time we have had since the argument will allow, we feel ourselves warranted in adopting the opinion, that the creditors in France have obtained, and do now enjoy, all the security to which by the laws of their own country they are entitled, for the due administration of the effects which may be collected here ; so that there is no occasion to increase the penalty of the bond on their account.
By the Code Napoleon, Ms. 3, tit. 1, c. 5, § 3, it is ordained, that the heir of a deceased person may take upon himself the succession generally, in which case he is chargeable with all the debts of the deceased, or he may accept the succession with the benefit of an inventory, in which case an account is taken of all the property, movable or immovable, of the deceased, and he becomes chargeable with the debts, only to the extent of the value of the estate so taken. He must in such case administer the estate of the deceased, and must render an account of his administration to creditors and legatees, and in both cases the creditors may demand caution or surety of him for faithful administration of and accounting for the estate.
It appears by a book entitled Nouveau Style des Notairea de Paris, which is a sort of practical exposition of the Code in relation to successions, that the inventory must comprehend all the objects which are found belonging to the estate of the deceased, viz. an exact statement, which shall contain in detail all the movables, effects, merchandise, their value, declaration of debts, active and passive, the title deeds and papers of all estate whatsoever left by the deceased, in a word, all the muniments and documents belonging to the succession. And in case of the acceptance of the succession with benefit of inventory, the creditors or other persons interested may require that the heir be held to give caution for the value of the personal estate comprised in the inventory, and for that portion of the real estate sold which should be remitted to the creditors on mortgage. And in default of giving this caution, *74 the sums arising on such sales are remitted, on the demand of any person interested, to a judicial depositary, to be appropriated by him to the payment of charges upon the inhertance. We have not, it is true, seen the inventory of the effects of this intestate, but we have evidence before us, that the appellant and his brother accepted the succession under the benefit of an inventory, and that an inventory was actually made and deposited ; and we have a right to presume that every thing was done for the interest and security of the creditors, which the laws of France require towards investing the heirs with full authority over the effects, and that creditors, having the right of obtaining that caution or surety which is secured to them by the law, have exercised their right. As before observed, all the authority of both heirs is devolved upon the appellant by regular admission to the succession, and by authority from his brother. He came to this commonwealth clothed with the authority of an administrator in his own country, having as full power over the effects of the deceased as are enjoyed here by administrators under our laws. But he cannot, according to the policy' of our laws, be admitted to the privileges of that character by force of his foreign appointment. It is required, that in order to sue for debts, he or some other person should take letters oí administration according to the forms and provisions of our law. His administration here is substantially ancillary, and he is accountable only to himself and to his brother, the original administrators jointly invested with this authority in France. If one of our citizens had taken out administration of this estate, he would be bound by the condition of his bond, after satisfying the claims allowed against the estate here, to remit the balance to the appellant and his brother, administrators in Paris, and there they would be held, by virtue of their obligations upon the inventory, to distribute the proceeds according to the law of France.
This is a view which shows a sufficient reason for requiring bonds to a less amount than would in ordinary cases be re quired. And the same rule would apply, if an English executor or administrator, having given full security at home and *75 there being no creditors here, should obtain administration -*lere ™ order to collect debts due to the estate.
Under the circumstances of this case, therefore, we are entirely satisfied, that agreeably to law, and within the sound rules of discretion, the letters of administration ought to be granted on giving bond with a reasonable penalty. The administrator must settle his administration account here, and if he receives any effects by virtue of the power communicated by our probate court, he is amenable to that court until discharged by the settlement of his account there, and the penalty of the bond should be large enough to secure the performance of this duty. He must therefore give bond with surety by persons inhabitants of this commonwealth, for that is specially required by St. 1782, c. 25 ; and probably the administration would be void if such bond were not given. The penalty of the bond, under all the circumstances of the case, we think would be sufficiently high at 5,000 dollars. And we therefore order, that the decree of the judge of probate be reversed, and that administration be granted to the appellant, on his giving a bond, in the form required by law, in the sum of 5,000 dollars, with sufficient sureties, inhabitants of this commonwealth.

 See the discussion of this subject in 13 Amer. Jurist, 72, et seq.; 14 Amer. Jurist, 83, et seq.